**U.S. BANKRUPTCY COURT**

**District of South Carolina**

Case Number:  **06-01888-hb**

Adversary Proceeding Number:  **08-80012-hb**

## SUMMARY JUDGMENT

The relief set forth on the following pages, for a total of 20 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**11/23/2010**



_US Bankruptcy Judge_
District of South Carolina

Entered: 11/23/2010

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Lee Holt Judd,<br><br><div align="right">Debtor(s).</div> | C/A No. 06-01888-HB<br><br>Adv. Pro. No. 08-80012-HB<br><br>Chapter 7 |
| Robert F. Anderson, Trustee,<br><br><div align="right">Plaintiff(s),</div><br>v.<br><br>John T. Holt<br>SunTrust Mortgage, Inc.<br>EMC Mortgage Corporation, as Servicer for<br>Citibank, N.A., as Trustee for<br>Certificateholders of Bear Stearns Asset<br>Backed Securities Trust 2007-SD-3, Asset<br>Backed Certificates Series 2007-SD3,<br><br><div align="right">Defendant(s).</div> | **SUMMARY JUDGMENT ORDER** |

This matter is before the court after an appeal of this Court's decisions to the United States District Court. The District Court entered a Memorandum Opinion and Order on August 5, 2010, in Civil Action No. 6:09-cv-02540-HFF (Docket #57), reversing this Court's decision of August 7, 2009 (Docket # 48), and remanding the matter to this Court for further proceedings. This Court's prior Order decided cross motions for summary judgment made by the parties herein pursuant to Fed. R. Civ. P. 56, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056. In that Order this Court granted summary judgment in favor of SunTrust Mortgage, Inc. and EMC Mortgage Corporation ("Defendants"). Plaintiff Trustee appealed.

In the District Court's Order, Judge Henry Floyd held that this Court's decision granting summary judgment should be "**REVERSED** and this case … **REMANDED** to the Bankruptcy Court to consider the parties' other contentions in the first instance." (Docket # 57 at p. 9).  Interpreting the language of that order, this Court believes that the District Court reversed this Court's decision granting Summary Judgment to Defendants on the issue of whether Plaintiff is entitled to bona fide purchaser status.  In addition, the District Court found that as a matter of law Plaintiff is a bona fide purchaser for value.  However, this conclusion does not resolve all the issues presented in the parties' cross-motions for summary judgment.  As recognized by the District Court, it is now this Court's duty to consider the remaining claims and defenses of both parties.

The District Court's ruling on the appeal did not disturb the statement of the relevant facts found in the prior Order, only the legal conclusions.  The relevant portions of that Order are incorporated herein by reference.  However, a short summary of the facts is warranted here.

Lee Holt Judd ("Debtor") owned property in Florida referred to as "Unit 603."  The property was encumbered by several mortgages of significant amounts.  Debtor executed a deed dated April 27, 2006, transferring that property to her father, Defendant John T. Holt ("Holt").  Holt borrowed funds to purchase the property from Debtor and to pay off the existing mortgages.  Holt gave a note and mortgage to his lenders on April 27, 2006.  On May 4, 2006, Debtor filed a voluntary bankruptcy petition.  At that time the real estate records reflected that Debtor was still the owner of the property and that Unit 603 was encumbered by the mortgages thereon granted by Debtor.  Before the Debtor filed the bankruptcy case, the funds loaned to Holt to purchase the property and pay Debtor's

mortgages so that the property could be transferred had been collected by the closing agent. Holt's loans were then used to satisfy or secure a release of all liens and mortgages granted by Debtor and encumbering Unit 603.

The deed to Holt and his mortgages were recorded on June 8, 2006, after the bankruptcy was filed and before the prior mortgages encumbering the property were released on the public record.

The Plaintiff Trustee filed this suit to recover Unit 603 from Holt and was successful in returning it to the estate when judgment was entered against Holt by default in this adversary proceeding. At the time the property was recovered by the Trustee, it was deeded in Holt's name and encumbered by mortgages granted by Holt and now held by Defendants. In this lawsuit the Plaintiff Trustee seeks to avoid the mortgages granted by Holt and use Unit 603 and/or its proceeds for the benefit of the estate free and clear of any mortgages granted by Judd or Holt. Trustee claims hypothetical bona fide purchaser status as his weapon for accomplishing this goal.

Despite the District Court's finding on appeal that Plaintiff is a bona fide purchaser, Defendants ask the Court to grant summary judgment in their favor. Defendants argue that pursuant to Florida state law, they should be subrogated to the rights of the holders of the pre-petition liens on Debtor's property that were paid off by the mortgages Holt granted to Defendants to pay those liens and accomplish the transfer of the property. Defendants claim they are entitled to subrogation either under the principle of conventional subrogation or equitable subrogation. In addition, Defendants allege that summary judgment should be granted in their favor to the extent that the Trustee's avoidance of the pre-petition transfer of Unit 603 from Debtor to Holt has unjustly enriched the estate at Defendants' expense.

(Docket # 43).   Trustee argues that Defendants are not entitled to summary judgment because they do not satisfy the requirements of 11 U.S.C. § 509, which Trustee asserts is required in addition to meeting the state law subrogation requirements.   Trustee further contends that Defendants do not meet the equitable subrogation requirements under Florida state law. (Docket # 46).

In the alternative, Defendants argue that they are entitled to summary judgment pursuant to their defenses asserted under § 550(b) and (e).   Under § 550(b), Defendants claim they are subsequent transferees that took for value in good faith without knowledge of the voidability of the transfer avoided.   Under § 550(e), Defendants argue that their mortgage, which satisfied and released the pre-petition mortgages on Unit 603, constitutes an improvement to the property under § 550(e).   Therefore, they should be entitled to a lien in the amount of their improvement.

Lastly, Defendants assert that if the Court finds that the Trustee's avoidance of the transfer in question can be made under § 548 as a fraudulent transfer, then § 548(c) applies. Under § 548(c), Defendants claim they are good faith transferees for value and should be awarded summary judgment entitling them to a lien to the extent that they gave value to the estate.   Trustee contests each defense asserted by Defendants.

## STANDARD OF REVIEW:

Pursuant to Fed. R. Civ. P. 56(c), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056, summary judgment "should be rendered if the pleadings, the discovery and disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).   "The judge is not to weigh the evidence, but rather to

determine if there is a genuine issue of fact for trial." *McCoy v. Lewis*, C/A No. 4:09-2269-PMD, 2010 WL 3169431, slip op. at *3 (D.S.C. Aug. 9, 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

"The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the non-moving party." *Sain v. HSBC Mortg. Services, Inc.*, C/A No. 4:08-2856-TLW-SVH, 2010 WL 2902741, slip op. at *2 (D.S.C. June 10, 2010) (citing *United States v. Diebold, Inc.*, 369 U.S. 654 (1962)). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra Inc.*, 947 F.2d 115, 119 (4th Cir. 1991).

> When both parties file motions for summary judgment, as here, the court applies the same standards of review. *Taft Broad. Co. v. U.S.,* 929 F.2d 240, 248 (6th Cir. 1991); *ITCO Corp. v. Michelin Tire Corp.,* 722 F.2d 42, 45 n.3 (4th Cir.1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment—even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied,* 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985). The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.,* 627 F.Supp. 170, 172 (D.Md.1985).

*Koon v. Cnty. of Newberry, S.C.*, C/A No. 3:09-1021-SB-JRM, 2010 WL 3781829, slip op. at *1 (D.S.C. Feb. 4, 2010).

## DISCUSSION AND CONCLUSIONS OF LAW:

### Trustees' Motion for Summary Judgment—11 U.S.C. § 509:

Trustee asserts that Defendants must meet the requirements for equitable subrogation under both state law and § 509 of the Bankruptcy Code.  Section 509, which is titled "Claims of codebtors" states that:

> (a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.
> (b) Such entity is not subrogated to the rights of such creditor to the extent that—
>> (1) a claim of such entity for reimbursement or contribution on account of such payment of such creditor's claim is—
>>> (A) allowed under section 502 of this title;
>>> (B) disallowed other than under section 502(e) of this title; or
>>> (C) subordinated under section 510 of this title; or
>> (2) as between the debtor and such entity, such entity received the consideration for the claim held by such creditor.
> (c) The court shall subordinate to the claim of a creditor and for the benefit of such creditor an allowed claim, by way of subrogation under this section, or for reimbursement or contribution, of an entity that is liable with the debtor on, or that has secured, such creditor's claim, until such creditor's claim is paid in full, either through payments under this title or otherwise.

11 U.S.C. § 509.  The language of § 509 and its title indicate that the provision is inapplicable to these facts.

In addition, Trustee does not thoroughly support his claim that subrogation requirements for both state law and § 509 must be met.  Trustee cites cases from various jurisdictions supporting this contention; however, none of these cases are controlling under the Eleventh Circuit or Florida law.  In fact, the only case cited by the Trustee from the Eleventh Circuit, *In re Celotex Corp.*, 472 F.3d 1318 (11th Cir. 2006), is contradictory to Trustee's argument.  The court in *In re Celotex Corp.* considered alternative claims for equitable subrogation under § 509 **and** Florida state law claims. *Id.* at 1319-23. Furthermore, at the District Court level, the court stated that "[i]f the Code provides the claimant the election of subrogation similarly the claimant can argue the alternative theories

6

of subrogation . . . Therefore it is the finding of this Court that § 509 establishes a specific **nonexclusive** test for the allowance of a subrogation claim." *Celotex Corp. v. Allstate Ins. Co., et al.*, 289 B.R. 460, 473 (Bankr. M.D. Fla. 2003), *aff'd* 472 F.3d 1318 (11th Cir. 2006) (emphasis added); *see also In re Houston*, 409 B.R. 799, 808 (Bankr. D.S.C. 2009) (citing *McAllister Towing v. Ambassador Factors (In re Topgallant Lines, Inc.,* 154 B.R. 368, 382 (S.D. Ga. 1993), *aff'd*, 20 F.3d 1175 (11th Cir. 1994) ("The majority and better rule is that both subrogation under § 509 and equitable subrogation under state law are available in bankruptcy proceedings.")).

Thus, Defendants are not required to meet the requirements for equitable subrogation under § 509 of the Bankruptcy Code and Trustee's motion for summary judgment on this point is denied.

### Defendants' Motion for Summary Judgment:

<u>Conventional Subrogation:</u>

In general, "[s]ubrogation is the substitution of one person in the place of another with reference to a lawful claim or right." *Boley v. Daniel*, 72 So. 644, 645 (1916). "The doctrine of subrogation is generally invoked when one person has satisfied the obligations of another and equity compels that the person discharging the debt stand in the shoes of the person whose claim has been discharged, thereby succeeding to the rights and priorities of the original creditor." *Eastern Nat'l Bank v. Glendale Fed. Sav. & Loan*, 508 So.2d 1323, 1324 (Fla. 1987). Florida recognizes two types of subrogation: conventional and equitable.

> Conventional subrogation . . . arises by virtue of an agreement, express or implied, that a third person or one having no previous interest in the matter involved shall, upon discharging an obligation or paying a debt, be substituted in the place of the creditor with respect to such rights, remedies, or securities as [the creditor] may have against the debtor.

7

*Wolf v. Spariosu*, 706 So.2d 881, 883 (Fla. Dist. Ct. App. 1998) (citations omitted).

The facts of the instant case appear to warrant the application of conventional subrogation because Defendants, who had no previous interest in this matter, discharged the previous mortgages encumbering Unit 603.   However, it cannot be ignored by this Court that conventional subrogation has only been employed by Florida courts in cases involving refinances. *See, e.g., Wolf v. Spariosu*, 706 So.2d 881 (Fla. Dist. Ct. App. 1998); *Eastern Nat'l Bank v. Glendale Fed. Sav. & Loan*, 508 So.2d 1323 (Fla. Dist. Ct. App. 1987).   The instant case does not involve a refinance (mortgagor A's debt owed to mortgagee X is replaced by a new loan from mortgagee Y).   Rather, this case involves a transfer of property (mortgagor A's debt to mortgagee X is paid by mortgagor B's loan from mortgagee Y and the mortgaged property is transferred from A to B in the process).   Therefore, the Court will address Defendants' claims for equitable subrogation and other defenses.

<u>Equitable Subrogation:</u>

"Equitable subrogation arises when the person discharging the obligation is under a legal duty to do so or when the person discharges the obligation to protect an interest in, or a right to, the property." *Eastern Nat'l*, 508 So.2d at 1324.   "The doctrine is founded on established principles of equity to prevent an unjust forfeiture, on the one hand, and a windfall amounting to unjust enrichment, on the other." *In re Forfeiture of United States Currency in the Amount of Ninety-One Thousand Three Hundred Fifty-Seven and 12/100 Dollars ($91,357.12)*, 595 So.2d 998, 1000 (Fla. Dist. Ct. App. 1992), *rev. denied*, 601 So.2d 552 (Fla. 1992).

Florida courts have applied equitable subrogation in several contexts, including refinances[1], joint tortfeasors[2], and property conveyances. *Radison Prop., Inc. v. Flamingo Groves, Inc.*, 767 So.2d 587 (Fla. Dist. Ct. App. 2000), involved the use of equitable subrogation in the context of a transfer of property and payment of prior liens. *Id.* at 591-92.

State law equitable subrogation has been applied to defeat claims of a bankruptcy trustee as a bona fide purchaser for value.[3]   For example, applying Virginia state law, the Bankruptcy Court for the Eastern District of Virginia held that the trustee's status as a bona fide purchaser for value was subject to the creditor's equitable subrogation claim. *In re Reasonover*, 236 B.R. 219, 233 (Bankr. E.D. Va. 1999*), remanded after appeal*, 238 F.3d 414 (4th Cir. 2000) (table), *on remand* C/A No. 98-1288, 2001 WL 1168181, slip op. (Bankr. E.D. Va. April 16, 2001).   *In re Project Homestead, Inc.*, 374 B.R. 193 (Bankr. M.D.N.C. 2007), involved lenders who extended loans to purchasers that bought real property from the debtor.   "At each closing, the Purchasers executed a promissory note in favor of the Lender, along with a deed of trust purportedly granting the Lender a lien on the property being purchased to secure the promissory note." *Id.* at 198.   However, the closing attorney, who was left with the deeds from the debtor and the deeds of trust from the purchasers, failed to record either deeds. *Id.*   In the adversary proceeding, the lenders sought to be subrogated to the rights of the prior lenders. *Id.* at 205.   The court stated that the lenders' "equitable subrogation claims are not necessarily foreclosed as a result of the

---

[1]     *See Aurora Loan Serv. LLC v. Senchuk*, 36 So.3d 716 (Fla. Dist. Ct. App. 2010); *Suntrust Bank v. Riverside Nat'l Bank of Fla.*, 792 So.2d 1222 (Dist. Ct. App. 2001).
[2]     *See Celotex Corp. v. Allstate Ins. Corp.*, 289 B.R. 460 (Bankr. M.D. Fla. 2003); *Dade Cnty. School Bd. v. Radio Station WQBA*, 731 So.2d 638 (Fla. 1999).
[3]     The Court notes that this is dependent on the facts of each case and that not all jurisdictions agree with this principle. *See, e.g.*, *In re Deuel*, 594 F.3d 1073, 1080 (9th Cir. 2010) (stating that under California law, courts give priority to a bona fide purchaser over one claiming equitable subrogation); *In re Zaptocky*, 250 F.3d 1020, 1028 (6th Cir. 2001) (holding that under Ohio law, the doctrine of equitable subrogation does not apply against a bona fide purchaser without knowledge).

Trustee's status as a bona fide purchaser under section 544(a)(1) [*sic*]." *Id.*  Applying North Carolina equitable subrogation law, the court found that because of North Carolina's "pure race" recording statute:

> . . . the relative rights of an equitable subrogee and the trustee depend on whether, at the time the petition is filed, there was a pre-petition filing on record upon which the equitable subrogee may rely.  If so, then the equitable subrogee may defeat the trustee since the trustee would take the property subject to the recorded liens.

*Id.* (citing *In re Reasonover*, 236 B.R. 219, 232-33 (Bankr. E.D. Va. 1999)).  Each of the properties involved in this case was encumbered by a deed of trust from the debtor that was paid by loans now owed to Defendants.  "As a result, if the Lenders are entitled to the remedy of equitable subrogation, they may thereby succeed to the rights under the deeds of trust and, to the extent their payments to the prior lenders, have priority over the Trustee." *Id.*  The court then found that the lenders' claims were entitled to be equitably subrogated to the trustee's claim as a bona fide purchaser. *Id.* at 208 ("Although not strictly a refinancing, this is precisely the type of situation that, under the broad equitable principles recognized in the North Carolina cases, the remedy of equitable subrogation may be invoked by the new lender in order to claim the rights formerly held by the old lender under the old lender's deed of trust.").

Defendants assert that they are entitled to summary judgment because they meet all the requirements of traditional equitable subrogation.[4]  This Court agrees.  To maintain a claim based on traditional equitable subrogation, Defendants must satisfy five elements: "(1)

---

[4]        Defendants also assert that they are entitled to summary judgment because they meet the requirements of modern equitable subrogation.  A portion of Defendants' motion is dedicated to the evolution of equitable subrogation in Florida courts from the traditional to modern view.  This Court finds that Defendants meet all requirements of traditional equitable subrogation, the more demanding of the two forms of subrogation.  Therefore, the Court need not discuss the differences between the opposing views and whether Defendants meet the less strenuous requirements of modern equitable subrogation.

that [they] made the payment at issue to protect [their] own interests, (2) the payment was non-voluntary, (3) [they were] not primarily liable for the debt paid, (4) [they] paid the entire debt, and (5) subrogation would not work any injustice to the rights of a third party." *Nova Info. Sys., Inc. v. Greenwich Ins. Co., NAC*, 365 F.3d 996 (11th Cir. 2004) (citations omitted).

Defendants advanced funds to Holt for the purchase of Unit 603 and to pay off the existing mortgages thereon. Trustee asserts that Defendants did not make these payments in their own interest because Defendants were "not being threatened by the previous lenders to pursue legal claims." (Docket # 46 at 5). Whether the previous lenders were pursuing legal claims against Defendants is irrelevant. Defendants made these payments in financing Mr. Holt's purchase to release the prior liens. This was, in fact, to protect their own interests by ensuring that there were no superior liens on the property.

The Defendants' payment was not voluntary because they had knowledge of the prior mortgages and were ensuring that all prior liens on the property were released. *See Radison Prop.*, 767 So.2d at 591 (supporting the contention that paying off liens that would otherwise be superior to one's own mortgage is not a voluntary action preventing one from being entitled to equitable subrogation); *see also Boley*, 72 So. at 645-46 (stating that knowledge of the first mortgage debt infers an agreement for the subsequent mortgage to replace the first, preventing the action from being merely voluntary).

In addition, the Defendants were not primarily liable for the debts paid because the debts were for debts owed and mortgages granted by the Debtor on property sold to Holt. Furthermore, Defendants paid the entire debt because, as the stipulated facts state, all previous mortgages and judgments were satisfied and/or released.

11

Finally, subrogation of Defendants' claim would not work any injustice to the rights of a third party, the Trustee. The mortgage proceeds were used to pay off all prior recorded mortgages which would have remained liens on the property had the conveyance to Holt not occurred. Allowing Defendants the right to be subrogated to the claims of the prior lienholders does not deprive the estate of any property or money it would have otherwise been entitled to and Defendants are entitled to "stand in" the shoes of the creditor whose debt it discharged. Furthermore, preventing Defendants' claim from being equitably subrogated would allow the estate to receive a windfall and result in a gross inequity. The estate would receive not only the proceeds resulting from the recovery and sale of Unit 603, but also the value of the satisfaction of the pre-petition liens by Holt's creditors (Defendants).

Defendants' own negligence in failing to record the mortgage in a timely fashion does not prevent their claim from being equitably subrogated. "[E]quitable subrogation will be applied to relieve negligence, where the position of the original junior lienors will be no worse than before the first mortgage was satisfied." *Riverside*, 792 So.2d at 1225. Defendants' failure to record its mortgage before the bankruptcy was filed and not until June 8, 2006, does not prevent their claim from being equitably subrogated because at all times there was a recorded mortgage on the property.[5] Therefore, Trustee's claim was always junior to a recorded mortgage on the record and it will not be worse than before by equitably subrogating Defendants' claim. Further, there is no evidence that Defendants were aware of the bankruptcy filing because the petition was filed after the loan to Holt to transfer Unit 603

---

[5] The stipulated facts indicate that all the mortgages recorded prior to Defendants' mortgage were not satisfied and released until June 12, 2006.

was made.  In addition, notice of the bankruptcy proceeding was not recorded in Monroe

County, Florida until almost one year after the transfer took place.

Defendants are entitled to summary judgment on the issue of equitable subrogation.

<u>11 U.S.C. § 550(b):</u>

Section 550 of the Bankruptcy Code provides the means for a trustee to recover

transferred property pursuant to his avoidance powers under § 544.  Section 550(a) states

that:

> (a) Except as otherwise provided in this section, to the extent that a transfer is
> avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title,
> the trustee may recover, for the benefit of the estate, the property transferred,
> or, if the court so orders, the value of such property, from—
>> (1) the initial transferee of such transfer or the entity for whose
>> benefit such transfer was made; or
>> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).  Although § 550(a) grants the trustee these powers to recover property,

they are qualified.  Section 550(b) limits the trustee's powers by providing that:

> (b) The trustee may not recover under section (a)(2) of this section from—
>> (1) a transferee that takes for value, including satisfaction or securing
>> of a present or antecedent debt, in good faith, and without knowledge
>> of the voidability of the transfer avoided; or
>> (2) any immediate or mediate good faith transferee of such transferee.

11 U.S.C. § 550(b).  Therefore, § 550(b) limits the liability of a secondary transferee if such

transferee takes for value, in good faith and without knowledge of the voidability of the

transfer.

The value required for § 550(b) need not be a reasonably equivalent value. *See In re

Enron Corp.*, 333 B.R. 205 (Bankr. S.D.N.Y. 2005); *In re Carr*, 34 B.R. 653 (Bankr. D.

Conn. 1983) *aff'd*, 40 B.R. 1007 (D. Conn. 1984).  However, it must be "consideration

sufficient to support a simple contract, analogous to the 'value' required under state law to

achieve the status of a *bona fide* purchaser for value." *See* 550-22 Collier on Bankruptcy at ¶ 550.03[1].  Therefore, a party paying a grossly inadequate price cannot be considered a transferee taking "for value."  Typically, whether one acts in good faith is determined by "whether the grantee knew or should have known that he was not trading normally but that on the contrary, the purpose of the trade, as far as the debtor was concerned, was the defrauding of his creditors." *Id.* at ¶ 550.03[2].  Lastly, knowledge of the voidability of the transfer has been determined by the Fourth Circuit to constitute actual notice, not merely constructive notice, of the voidability. *See Smith v. Mixon*, 788 F.2d 229, 232 (4th Cir. 1986).  The court reasoned that "[a]s several courts have noted when analyzing § 544 of the bankruptcy code, '[t]he term 'notice' may include either actual or constructive notice, while the term 'knowledge' includes only actual notice. That Congress selected the term 'knowledge' [in § 550(b)(1)] is significant." *Id.* (citations omitted).

Defendants assert that they are entitled to summary judgment under § 550(b).  However, Trustee argues that Defendants are not subsequent transferees.  Rather, Trustee claims that Defendants are initial transferees because their mortgage was unrecorded.  Therefore, he asserts that he can directly avoid their transfer and recover the value of the property under § 550(a)(1).

Pre-petition, SunTrust advanced funds to Mr. Holt for the purpose of purchasing Unit 603 in exchange for a mortgage on the property.  SunTrust and EMC then exchanged value in the assignment of the note and mortgage.  The only evidence before the Court indicates that Defendants received the transfer in good faith because there is no evidence that they were aware of any defects in the transfer of the property from Debtor to Holt.  There is no evidence that Defendants interacted with the Debtor; they merely loaned funds

to Holt to enable him to purchase Unit 603.  Finally, Defendants did not have knowledge of the voidability of the transfer—which was premised on Bankruptcy Code recovery statutes—because it took place prior to the Debtor's bankruptcy filing.  Even if the transfer is the act of recording the mortgage rather than funding it, notice of Debtor's bankruptcy filing was not filed on the public records in Monroe County, Florida, where Unit 603 is located, until almost a year after the transfer took place and there is no evidence that Defendants were aware of the bankruptcy.  Therefore, Defendants have satisfied the requirements under § 550(b).

Further, the recordation of liens on Unit 603 in favor of Defendants by Holt could occur only after the transfer of property from Debtor to Holt.  Under § 550(b), an initial transferee is the first recipient of the property, an immediate transferee is the second recipient, and a mediate transferee is the third recipient.  Therefore, pursuant to § 550(b), Defendants constitute immediate transferees and are entitled to summary judgment on this issue.

## 11 U.S.C. 550(e):

Section 550(e) of the Bankruptcy Code states that:

(1) A good faith transferee from whom the trustee may recover under subsection (a) of this section has a lien on the property recovered to secure the lesser value of—
>  (A) the cost, to such transferee, of any improvement made after the transfer, less the amount of any profit realized by or accruing to such transferee from such property; and
>  (B) any increase in the value of such property as a result of such improvement, of the property transferred.

11 U.S.C. § 550(e)(1).  In addition, § 550(2)(2)(D) clarifies that "[i]n this subsection, 'improvement' includes—(D) payment of any debt secured by a lien on such property that is superior or equal to the rights of the trustee . . ." 11 U.S.C. § 550(e)(2)(D).

The Trustee asserts that § 550 is inapplicable because the Trustee did not seek recovery under § 550. "Instead, the mortgage was preserved for the benefit of the estate under Section 551, and Section 550 never came into play." (Docket # 42 at 8). Even if the mortgage was preserved for the benefit of the estate under § 551, that provision is subject to the exceptions stated in § 550.

The Defendants rely primarily on *Lepelley v. Lepelley* (*In re Lepelley*), 233 B.R. 802 (Bankr. N.D. Ohio 1999), to support their contention that the payment of the pre-petition liens of the Debtor constituted an improvement, preventing Trustee from avoiding the resulting recorded mortgages granted by Holt. In *Lepelley*, the court held that the second mortgage in a refinance constituted an improvement under § 550(e). *Id.* at 808. Although the second mortgage was improperly executed because of insufficient witnesses and avoided by the Trustee under § 544(a), the court found that it was an improvement under § 550(e) because it satisfied the first mortgage which, in turn, "increased the value of the property by extinguishing a lien which would have been superior to the Trustee's status pursuant to 11 U.S.C. § 544(a)." *Id.* Furthermore, the court held that the transfer did not occur when the mortgage was recorded, but rather when the Debtors executed the mortgage to refinance, "as that execution constituted the transaction of interest in property including retention of title as a security interest." *Id* at 809. Therefore, the improvement took place after the transfer, as required by § 550(a), because the pay-off of the first mortgage was made after the second mortgage was executed.

Like the *Leppelly* case, the instant case involves an "improvement" to the property that occurred after the transfer. The Defendants' mortgage improved the value of the property because it paid off pre-petition liens that would have encumbered Unit 603 but for

the transfer.  In addition, these pre-petition liens were superior to the Trustee because they were executed and recorded prior to the bankruptcy petition.  Lastly, the improvement occurred subsequent to the transfer because the transfer took place on April 27, 2006, when the mortgage was executed, but the improvement did not take place until June 2006, when the prior mortgages were satisfied and released. (Docket # 43 at 4-7).

The Trustee asserts that Defendants are not good faith transferees because "they were aware that their mortgages had not been recorded, they had actual knowledge of the voidable nature of their liens." (Docket # 42 at 8).  However, there is nothing in the record to support this contention.  The Defendants merely interacted with Holt and funded his purchase of Unit 603 and payment of existing liens several days before the Debtor filed bankruptcy.  There is no indication that the Defendants had actual knowledge of the voidable nature of their liens because, as the facts stipulate, neither Defendant "had actual knowledge of the Debtor's bankruptcy petition before the foregoing transactions occurred." (Docket # 43 at 7).  Thus, there are no issues of material fact and Defendants are entitled to summary judgment on this point.

<u>11 U.S.C. § 548(c):</u>

Section 548 of the Bankruptcy Code allows the trustee to avoid fraudulent transfers.  However, § 548(c) states that:

> Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

11 U.S.C. § 548(c).

17

The Defendants assert that "if the court finds that the Trustee's avoidance of the Property's transfer is meritorious under Section 548 but not so under Section 544(a)(3), the Defendants claim a lien to the extent that they each gave value to the estate." (Docket # 43 at 35). However, as the District Court ruled, the Trustee has the status of a bona fide purchaser for value under § 544(a)(3). (Docket # 57 at p. 9) (finding that there was insufficient notice to defeat Trustee's claim as a bona fide purchaser). Thus, Trustee has the power to avoid Defendant's transfer, subject to Defendants' subrogation claims and other defenses under the Code. Because Trustee has avoidance powers as a bona fide purchaser for value under § 544(a)(3), the first sentence of § 548(c) is triggered and Defendants cannot assert any defenses under the remaining portion of § 548(c). Essentially, the District Court's holding that Trustee has the status of a bona fide purchaser under § 544(a)(3) nullified the defense asserted by Defendants' under § 548(c). Therefore, this matter is mooted by that decision.

Entry of this Order, together with prior Order of the Court in this matter, results in a resolution of all matters raised in this adversary proceeding and grants judgment in favor of the Defendants.

**IT IS THEREFORE ORDERED,**

1. That the Trustee's Motion for summary judgment is hereby denied as to the 11 U.S.C. § 509 claim;

2. That the Defendants' Motion for summary judgment is hereby denied as to the conventional subrogation defense;

3. That the Defendants' Motion for summary judgment is hereby granted as to the equitable subrogation defense;

4.  That the Defendants' Motion for summary judgment is hereby granted as to the
    11 U.S.C. § 550(b) defense;

5.  That the Defendants' Motion for summary judgment is hereby granted as to the
    11 U.S.C. § 550(e) defense;

6.  That the Defendants' Motion for summary judgment relating to defenses to the
    Trustee's 11 U.S.C. § 548(c) claim is moot.